STATE OF MAINE
WALDO, SS.

SUPERIOR COURT
DOCKET NO. CV-17-21

WAYNE SINCLAIR        )
     Plaintiff        )
                )        FINDINGS & JUDGMENT
     v.        )
                )
RANDY TANGARO        )
     Defendant        )

## PROCEDURAL BACKGROUND

The proceeding before the Court in this case included 14 counts from the Plaintiff's Complaint, and an additional nine counts from the Defendant's Counterclaim. A trial in this matter was held before the Court on August 19, 2020, at which time testimony was presented by both the parties, and a total 32 exhibits were admitted into evidence.

At the outset of the trial, the parties stipulated to the dismissal of Counts 1 and 2 in the Complaint and Counts 1 through 4 of the Counterclaim. At an earlier pretrial conference, the Court had issued an order identifying the trial issues to be, in part, "existence of contracts, breach of contracts, damages." The specific remaining counts all alleged claims for either breach of contract, or, in the alternative, claims of implied contract or unjust enrichment with respect to various interactions between the parties.[1]

---

[1] The only remaining count (Count 9 of the Counterclaim) which does not assert this sort of Breach of Contract or related alternative claim, is a claim of Conversion relating to a 2014 Dodge pickup truck.

1

## FACTUAL BACKGROUND

The parties to this proceeding have had a lengthy transactional relationship with each other that spanned several years. The various transactions involved, in part, the purchase and sale of real estate, purchase and/or repair or refurbishing work to numerous vehicles, investments in business ventures, and a specific transaction involving a 2014 Dodge Ram pickup truck. Despite this lengthy transactional relationship, the specific details and formalities associated with these various business transactions was sparse, at best.

It is clear that the Defendant, at various times and involving various vehicles, performed refurbishing services relating to the Plaintiff's vehicles. It is equally clear that the Plaintiff paid substantial sums to the Defendant for the Defendant to perform such services. However, based upon the evidence presented at the trial, this Court can not determine, by a preponderance of the evidence standard, what work was done by the Defendant on any particular vehicle, what amount was paid by the Plaintiff for any such work, and what, if any, amounts may be due to either the Plaintiff or the Defendant relating to the transactions involving the vehicles referred to as: the 1968 Oldsmobile (Count 9 of Complaint and Count 5 of Counterclaim); the 1969 Oldsmobile or Studebaker (Count 12 of the Complaint); the 1965 Ford Galaxy (Count 7 and 8 of the Counterclaim); and the 1941 Oldsmobile (not specified in a particular Count). Accordingly, the party with the burden of proof with respect to any such claim involving work done or payments made for vehicle refurbishing or repair work, has failed to meet their respective

2

burden, and Judgment will be rendered in favor of the Defendant and Counterclaim Defendant as to each such Count as noted below.

Sometime around early 2016, the parties engaged in discussions involving a business venture referred to as "In the Bag." This project involved the Defendant manufacturing a product in which to store motorcycles which would be sold to interested buyers. Plaintiff's Exhibit 2 was a handwritten document signed by both parties which purported to describe at least parts of the business transaction associated with "In the Bag." This Court concludes that neither that document, nor the testimony presented at trial establishes the existence of an enforceable contract relevant to the "In the Bag" venture.

Moreover, the evidence suggests the "In the Bag" venture was generally a business failure with income limited to a single sales trip to Florida which yielded limited success. The Plaintiff has failed to meet his burden of establishing any entitlement to a return of his "investment" based upon any reading of the incomprehensible terms outlined in Plaintiff's Exhibit 2, or any theory of implied contract or unjust enrichment.

Accordingly, judgment will be rendered in favor of the Defendant with respect to Counts 6, 7, and 8 of the Complaint.

The remaining Counts in the Complaint and Counterclaim relate to a 2014 Dodge Ram pickup truck which had initially been owned by the Plaintiff, and later owned by the Defendant. Specifically, on or about February 2016, the parties signed what the Court concludes was a contract for the purchase and sale of the same vehicle for $46,000. (Plaintiff's Exhibit 1). The Court is

3

not persuaded that the transaction involved a gift to the Defendant despite the earlier document which had been signed by the Plaintiff on or about January 25, 2016. (Defendants Exhibit 1).

Subsequent to the signing of the contract for the purchase of the 2014 Dodge, the Defendant made monthly payments of approximately $274 for the months of January, February, March, October, November, December 2016, and an additional monthly payment of $274 for January 2017. (Plaintiff's Exhibit 5, 8, and 9). The total payments made by the Defendant for the purchase of the 2014 Dodge equaled $1,917.83. Based on the purchase price as set forth in the sales contract, the Plaintiff is entitled to $44,082.17 in payments due based upon the breach of the sales contract.

In Count 9 of the Defendant's Counterclaim, he asserts a claim based upon alleged conversion of the same 2014 Dodge Ram pickup truck.[2] The conversion claim seems to be based upon the Plaintiff's use and possession of the 2014 Dodge during a portion of 2016 after the Plaintiff had sold the truck to the Defendant. There was testimonial evidence presented by both parties regarding that use of the vehicle during this timeframe, as well as a motor vehicle collision which occurred sometime during that period when the vehicle was being used by the Plaintiff.

The Law Court in the relatively recent case, *Estate of Barron v. Shapiro & Morley, LLC, 2017 ME 51, ¶14*, held as follows:

---

[2] The actual Count refers to a mobile home, but the Court considers this to be a typographical error.

4

[t]he necessary elements to establish a claim for conversion are a showing that (1) the person claiming that his or her property was converted has a property interest in the property; (2) the person had the right to possession at the time of the alleged conversion; and (3) the party with the right to possession made a demand for its return that was denied by the holder.

The same court went on to state:

"[C]onversion requires an actual interference with the property owner's rights beyond a brief and ultimately-harmless withholding." (Internal citations omitted). "To determine whether an interference is sufficiently serious as to amount to conversion, the court should consider the extent and duration of the actor's exercise of dominion or control; the actor's good faith; the extent and duration of the resulting interference with the other's right to control; the harm done; and the inconvenience and expense caused to the owner." (Internal citations omitted). *Id. at ¶17.*

In the pending case, the plaintiff's use of the 2014 Dodge Ram pickup in 2016 was completely authorized by the Defendant. Neither party specified the precise duration of the Plaintiff's use of the vehicle in 2016, but there was no indication that the Defendant had made any demand for the return of the vehicle at any point prior to its actual return by the Plaintiff. Moreover, the Court finds the Defendant's description of the alleged damage to the vehicle to be not credible. Accordingly, the Defendant has failed to meet his burden with respect to his claim of conversion in Count 9 of the

5

counterclaim. As a result, judgment is awarded to the Plaintiff/Counterclaim Defendant as to this count.

For the reasons set forth above, the Clerk is directed to incorporate these Findings & Judgment, by reference, in accordance with MRCivP 79(a) as follows:

Complaint:

    Count 1: dismissed by stipulation of the parties;

    Count 2: dismissed by stipulation of the parties;

    Count 3: Judgment for the Plaintiff in the amount of $44,082.17 plus interest and costs;

    Count 4: Judgment for the Defendant;

    Count 5: Judgment for the Defendant;

    Count 6: Judgment for the Defendant;

    Count 7: Judgment for the Defendant;

    Count 8: Judgment for the Defendant;

    Count 9: Judgment for the Defendant;

    Count 10: Judgment for the Defendant;

    Count 11: Judgment for the Defendant;

    Count 12: Judgment for the Defendant;

    Count 13: Judgment fort the Defendant;

    Count 14: Judgment for the Defendant.

Counterclaim:

    Count 1 – 4: Dismissed by stipulation of the parties;

Count 5: Judgment for the Plaintiff/Counterclaim Defendant;

Count 6: Judgment for the Plaintiff/Counterclaim Defendant;

Count 7: Judgment for the Plaintiff/Counterclaim Defendant;

Count 8: Judgment for the Plaintiff/Counterclaim Defendant;

Count 9: Judgment for the Plaintiff/Counterclaim Defendant;

Date: 10/19/2020

_____
SUPERIOR COURT JUSTICE

Entered on the Docket: 10/19/2020

7